UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ANTONIO PARRILLA,
and others similarly situated,

                                             Case No.: 6:08-CV-1967-ORL-31GJK

                    Plaintiff,

vs.

ALLCOM CONSTRUCTION &
INSTALLATION SERVICE, LLC.,

                    Defendant,
_____/

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT AND INCORPORATED MEMORANDUM OF LAW**

Plaintiff, ANTONIO PARRILLA, on behalf of himself and other similarly situated employees, by and through his undersigned counsel, hereby responds to the Motion for Summary Judgment filed by Defendant on June 1, 2009, and states:

**A.  The Affidavit of John Muller.**

When Jon Muller executed his Affidavit, he did not take an oath and an oath was not administered to him by the Notary.  (Muller, 79:1-22).  "It appears an oath should have been administered by the notary under these circumstances. *See* Fla. Stat. § 92.525." *Bernal v. All American Investment Realty, Inc.*, 479 F.Supp.2d 1291, 1329, fn.55 (S.D. Fla. 2007).  Further, the Affidavit fails to meet the requirements of 28 U.S.C. § 1746.  Thus, the Court should not consider the Affidavit because it fails to meet the minimum evidentiary threshold for affidavits filed in support of a motion for summary judgment.  *See* Rule 603 of the Federal Rules of Evidence.  "Unsworn testimony cannot be considered by the Court on summary judgment or at trial." *Access 4 All v. Oak Spring, Inc.*, 2005 WL 1212663, *8, fn.70 (M.D. Fla. 2005).

**B.  There is evidence that Plaintiff was an employee.**

Under the FLSA, employment is defined with "striking breadth." *Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. 318, 326, 112 S.Ct. 1344, 1350, 117 L.Ed.2d 581 (1992) (citing *Rutherford Food Corp. v. McComb,* 331 U.S. 722, 728, 67 S.Ct. 1473, 1475, 91 L.Ed. 1772 (1947)).  An entity is said to "employ" a person if it "suffers or permits" the person to work.  29 U.S.C. § 203(g).  The "suffer or permit to work" standard derives from state child-labor laws and has been called "the broadest definition [of employee] that has ever been included in one act." *Antenor v. D & S Farms,* 88 F.3d 925, 929 n. 5 (11th Cir.1996) (citing *Rutherford Food Corp.,* 331 U.S. at 728 n. 7, 67 S.Ct. at 1476 n. 7, and quoting *United States v. Rosenwasser,* 323 U.S. 360, 363 n. 3, 65 S.Ct. 295, 297 n. 3, 89 L.Ed. 301 (1945)).  Courts look not to the common law definition of employment, but rather to the "economic reality" of whether the putative employee is economically dependent upon the alleged employer.  *See Rutherford Food Corp.,* 331 U.S. at 730, 67 S.Ct. at 1477; *Aimable v. Long & Scott Farms,* 20 F.3d 434 (11th Cir.1994); *see also Harrell v. Diamond A Entertainment,* 992 F.Supp. 1343, 1348 (M.D.Fla.1997)**.**

This case calls for the Court to distinguish between an "employee" and an "independent contractor."  *See Herman v. Express Sixty-Minutes Delivery Serv., Inc.,* 161 F.3d 299, 303 (5th Cir.1998); *see also Donovan,* 642 F.2d at 143 ("The focal inquiry in the characterization process is thus whether the individual is or is not, as a matter of economic fact, in business for himself."); *see Santelices v. Cable Wiring,* 147 F.Supp.2d 1313, 1318 (S.D.Fla.2001) ("The touchstone of 'economic reality' in analyzing a possible employee/employer relationship for purposes of the FLSA is dependency.  The courts look at all of the surrounding circumstances of the 'whole activity' to determine whether the putative employee is economically dependent upon the alleged employer.").

One court has differentiated between employees and independent contractors as follows:

> "Employees" work for wages or salaries under direct supervision. "Independent contractors" undertake to do a job for a price, decide how the work will be done, usually hire others to do the work, and depend for their income not upon wages, but upon the difference between what they pay for goods, materials, and labor and what they receive for the end result, that is, upon profits. *N.L.R.B. v. Assoc'd Diamond Cabs, Inc.,* 702 F.2d 912, 919 (11th Cir.1983). *See also McGuiggan v. C.P.C. Int'l, Inc.,* 84 F.Supp.2d 470, 479-80 (S.D.N.Y.2000) ("In short, if the Plaintiffs were in business for themselves, they were not employees; If they were economically dependent on and within the direct control of CPC, they were employees.").

This "economic reality" or "economic dependence" inquiry involves a number of factors, including the degree of control exercised by the alleged employer; the extent of the relative investments of the worker and the alleged employer; the degree to which the worker's opportunity for profit and loss is determined by the alleged employer; the skill and initiative required in performing the job; and the permanency of the relationship. *Herman,* 161 F.3d at 303; *see also Donovan,* 642 F.2d at 143; *Usery,* 527 F.2d at 1312.[1] *No one isolated factor is determinative*; instead, courts look to the "circumstances of the whole activity." *Rutherford Food,* 331 U.S. at 730, 67 S.Ct. 1473; *Herman,* 161 F.3d at 303. These factors are used to gauge the degree to which the alleged employee is dependent upon the business with which he or she is connected, because dependence is the primary indicator of employee status. *Usery,* 527 F.2d at 1311. Ultimately, the final and determinative question must be whether the total of the testing establishes the personnel are so dependent upon the business with which they are connected that they come within the protection of FLSA or are sufficiently independent to lie outside of its ambit. *Id.* at 1311-12. This "dependency" question may be broken down into two factors: "(1) how specialized the nature of the work is, and (2) whether the individual is in business for

---

[1] Some courts add a sixth factor, that of "the degree to which the alleged employee's tasks are integral to the employer's business." *Harrell,* 992 F.Supp. at 1348; *see also Santelices,* 147 F.Supp.2d at 1319.

himself." *Halferty v. Pulse Drug Co., Inc.,* 821 F.2d 261, 265 n. 3 (5th Cir.1987) (internal citation and quotation omitted); *see also Mednick v. Albert Enters., Inc.,* 508 F.2d 297, 302 (5th Cir.1975) ("The concept has also been put in terms of whether the individual is in business for himself.") (internal citation and quotation omitted).

What Defendant has clearly missed in this case is that whether or not the parties in question intended to create an employment relationship is irrelevant to the economic realities test. *See Donovan v. New Floridian Hotel,* 676 F.2d 468, 471 (11th Cir.1982). Moreover, Defendant's reliance on its independent contractor agreement is misplaced because the mere labeling of an individual as an employee or an independent contractor is not dispositive. *See Rutherford Food Corp. v. McComb,* 331 U.S. 722, 729, 67 S.Ct. 1473, 91 L.Ed. 1772 (1947). The courts determine whether the employee depends or depended on the putative employer for his economic livelihood based on the parties' actual working relationship. *See Jeanneret v. Aron's E. Coast Towing,* 2002 U.S. Dist. LEXIS 12200, *6-7, 148 Lab. Cas. (CCH) P34,681, 2002 WL 32114470 (S.D.Fla.2002). The evidence in this case supports the conclusion that Plaintiff was an employee of Defendant and not an independent contractor as Defendant claims.

### (1) Degree of control by Defendants.

Paragraph 5(B) of the Affidavit of John Muller states, in pertinent part:

> Neither LLC nor any of its employees were subject to the supervision, direction or control of Allcom in the performance of work performed for BrightHouse.

(Doc. 17-2, ¶ 5(B)). This statement is contradicted by Mr. Muller's deposition testimony regarding Clint Vigus, supervisor/manager for Defendant. Mr. Muller testified that Mr. Vigus was the supervisor of the installation technicians. After the realization that he had contradicted his Affidavit, Mr. Muller changed his testimony to state that Mr. Vigus was not supervising the installation technicians, but instead supervising Mr. Muller's job for him and explained that the

term "supervisor" is another name for a manager in the industry. (Muller, 88:21-25; 89; 90:1-5); (Muller, 139:1-19).

Further, Mr. Muller testified that Plaintiff was not subject to termination or discipline. Apparently, Mr. Muller likes to play semantical games with words. Instead of admitting that Defendant would discipline or terminate installation technicians, Mr. Miller craftily stated, "[w]e just wouldn't use them." (Muller, 127:15-25); (Muller, 128:1-5). It is up to the finder of fact to decide what Mr. Muller's testimony **really** means.

Plaintiff has offered evidence showing that Defendant compelled installation technicians to work over forty hours a week; Defendant's management instructed installation technicians to complete work orders in excess of forty (40) hours in a workweek; the Plaintiff was subject to discipline and/or termination if he failed to work the required hours; that he could not independently make a determination that he would not work in excess of 40 hours per week; that if he did not work the hours necessitated by his work at Defendant, he would have been terminated and was threatened with such discipline during his employment; that he received directives from my supervisors pressuring and/or requiring him to work overtime to meet delivery quotas; that his ability to perform additional work was controlled by Defendant; that he could not designate another person to work in his stead and could not hire anyone to perform installation technician services on his behalf; that Defendant required him wear a shirt with Defendant's logo on it (Muller, 115:4-5); that he was also required to have magnetic signs on the side of his truck that contained Defendant's logo (Muller, 115:12-21); and, that he was required to wear an identification card with Defendant's logo on it. (Muller, 115:8-9). Defendant also controlled the time frames within which Plaintiff was to complete the work orders provided to him by Defendant. (Muller, 99:2-4); (Doc. 23-3); (Doc. 23-4).

"Control is only significant when it shows an individual exerts such a control over a meaningful part of the business that he stands as a separate economic entity." *Usery,* 527 F.2d at 1312-13.  Hence, Plaintiff has offered sufficient evidence to create an issue of fact as to whether he actually was able to exert control over a meaningful part of his work and whether or not Defendant had sufficient control over Plaintiff's employment as to be deemed his employer.

### (2) Relative Investments.

A car is an essential vehicle in most households, and there is no evidence suggesting that the Plaintiff purchased his vehicle for the primary purpose of his work for Defendant. *See Herman,* 161 F.3d at 304 (noting that investment in a vehicle is "somewhat diluted when one considers that the vehicle is also used by most drivers for personal purposes").

Defendant has failed to offer evidence of any significant investment made by the Plaintiff or any other installation technician.  While Mr. Muller's Affidavit does reference "vehicles, tools, equipment or supplies," it fails to state the value of such equipment and whether or not the items described are specialized tools and equipment versus every day hand tools and other equipment.  (Doc. 17-2, ¶ 5(C)).

### (3) Opportunity for Profit and Loss.

Plaintiff worked solely for Defendant and was solely dependent upon Defendant for his continued employment in the field of cable installation.  Defendant does not dispute this fact.  (Muller, 133:15-25; 136:1-12).  Plaintiff did not have the ability to negotiate with Defendant as to whether or not he would be treated as an independent contractor or identified as an independent contractor.  Defendant does not dispute this fact.  (Muller, 134:13-25; 135:1-14).  Plaintiff could not request or choose more lucrative work while employed by Defendant.  Defendant does not dispute this fact.  (Muller, 135:19-25; 136:1-20).  Plaintiff did not have the ability to negotiate rates for which he would be paid for the work he performed.  Defendant does

not dispute this fact.  (Muller, 24:3-15); (Muller, 136:21-25; 137:1-2).  Plaintiff's ability to perform additional work was controlled by Defendant.  While Defendant appears to dispute this fact, the dispute is whether or not Defendant always had additional work to give to Plaintiff, not whether or Defendant controls the ability to assign additional work.  (Muller, 137:3-25; 138:1-5).  Plaintiff's services were integral to Defendant's business.  Defendant does not dispute this fact.  (Muller, 122-123:1-9); compare to (Muller, Exhibit "3," ¶ 16; and Exhibit "4," ¶ 21).[2]  Without the services of cable installers, Defendant would be unable to perform its business operations.  (Id).  Plaintiff could not request or choose more lucrative work while employed by Defendant.  Defendant does not dispute this fact.  (Muller, 135:17-25; 136:1-7).  Plaintiff could not designate another person to work in his stead and could not hire anyone to perform cable installation services on his behalf and Defendant is unable to absolutely identify any entity contracting to perform installation technician services that had other employees.  (Doc. 23-3, ¶ 16); (Doc. 23-4, ¶ 11); (Muller, 87:8-25; 88:1-20).  Finally, and most importantly, Defendant set the rate at which Plaintiff would be paid for his work.  (Doc. 23-3, ¶ 20); (Doc. 23-4, ¶ 15); (Muller, 136:21-25; 137:1-2).

There is little to no evidence demonstrating that the Plaintiff actually was able to (or in fact did) reduce his costs through any means.  Moreover, the fact that an individual could request more work or re-negotiate his or her compensation is not indicative of independent contractor status, because any employee can do those things as well.  *Halferty,* 821 F.2d at 266.  What Defendant continues to ignore is that because it controlled the primary determining factor governing whether the Plaintiff could increase his earnings--the ability to perform additional work--the facts indicate that the Plaintiff was an employee, not an independent contractor.  *See Usery,* 527 F.2d at 1313.

---

[2] Mr. Muller was asked to circle the paragraph numbers he disagreed with.  He did not circle the cited paragraphs.

The installation technicians' costs are substantially controlled by the Defendant and are merely business expenses of Defendant that are unlawfully imposed upon the installation technicians as employees.[3]   Defendant would require some of the installation technicians, including some of the Plaintiffs herein, to pay worker's compensation premiums through payroll deductions.   This fact is important because the premiums were paid to insurance companies/agents of **Defendant's choosing** and the installation technician being charged a fee for worker's compensation insurance had no control whatsoever over the premium amount to be paid or the coverage purchased.  Even more important is the fact that the fee paid is not a dollar-for-dollar exchange.  Defendant charges a flat percentage from each installation technician not having worker's compensation insurance or providing it with a waiver.  (Muller, 24:20-25; 25-28; 29:1-9).

Defendant would also unilaterally chargeback the installation technicians for "insufficient work that is found by Bright House or by Client [Vigus]."  (Muller, 22:8-25; 29:1-24).  Hence, Plaintiff, nor any other installation technician, has the ability to dispute the chargeback or test the decision to have a chargeback deducted from their pay.  In fact, Defendant admits that the chargeback could be **in excess** of what an installation technician was paid for a job.  (Muller, 116:6-25; 117-122:1-3).

Hence, the only entity in control of its ability to make a profit or loss is the Defendant. The evidence in this case suggests that Defendant has control over Plaintiff's ability for profit or loss and that Defendant has merely concocted a scheme by which it is attempting to circumvent the requirements of the FLSA.

---

[3] Pursuant to § 440.105(4)(a)(2) of the Florida Statutes, it is unlawful for an employer to "[m]ake a deduction from the pay of any employee entitled to the benefits of this chapter for the purpose of requiring the employee to pay any portion of premium paid by the employer to a carrier or to contribute to a benefit fund or department maintained by such employer for the purpose of providing compensation or medical services and supplies as required by this chapter."

### (4) Skill and Initiative Required.

A lack of specialization indicates that an individual is an employee, not an independent contractor. *Halferty,* 821 F.2d at 267; *Gustafson v. Bell Atlantic Corp.,* 171 F.Supp.2d 311, 324 (S.D.N.Y.2001). Further, "[r]outine work which requires industry and efficiency is not indicative of independence and nonemployee status." *Usery,* 527 F.2d at 1314. Even if an individual has specialized skills, that is not indicative of independent contractor status where the individual does not use those skills in an independent fashion. *Baker,* 860 F.Supp. at 776.

Defendant has not offered any evidence that the Plaintiff has and used specialized skills. Hence, Defendant has not met its burden as the movant on a motion for summary judgment. The *party moving for summary judgment* has the burden of proving that: (1) there is no genuine issue as to any material fact, and (2) it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether the moving party has satisfied its burden, the Court *considers all inferences drawn from the underlying facts in the light most favorable to the party opposing the motion* and resolves all reasonable doubts against the moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court may not weigh conflicting evidence or weigh the credibility of the parties. *Hairston v. Gainesville Sun Pub. Co.,* 9 F.3d 913, 919 (11th Cir.1993). If a reasonable fact finder could draw more than one inference from the facts and that inference creates an issue of material fact, the Court must not grant summary judgment. *Id.* On the other hand, summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Celotex Corp.,* 477 U.S. at 322. As the Supreme Court has explained, a motion for summary judgment is properly made and supported when the

*moving party* has first demonstrated that there is no genuine issue of material fact. *Celotex Corp.,* 477 U.S. at 323.

Nevertheless, Plaintiff did not exercise skill or initiative in such a manner as to suggest that he operated as independent contractor. *See also Ansoumana v. Gristede's Operating Corp.,* 255 F.Supp.2d 184, 191 (S.D.N.Y.2003) (noting that delivery person needed little skill or initiative to find his way from a store to a customer's residence); *Bonnetts v. Arctic Express, Inc.,* 7 F.Supp.2d 977, 982 (S.D.Ohio 1998) (if defendant exerted significant control over plaintiff's route selection and other aspects of his job, plaintiff did not use his skills in an independent manner consistent with status as an independent contractor).

### (5) Permanency of the Relationship.

Defendant has made no argument regarding the permanency of its relationship with Plaintiff and offered no evidence on this issue. Thus, as argued above, it has failed to meet its burden as the movant on a motion for summary judgment.

### (6) Whether Plaintiff's services were integral to Defendant's business.

Defendant concedes this issue. (Muller, 123:2-10); (Muller, Exhibit 4). In any event, it cannot reasonably be disputed that Defendant operates a cable installation business, the Plaintiff was an installation technician, and without the Plaintiff's services, Defendant would have been unable to perform its business operations. The Plaintiff's services thus were integral to Defendant's business, indicating an employee-employer relationship. *See Ansoumana v. Gristede's Operating Corp.,* 255 F.Supp.2d 184, 191-92 (S.D.N.Y.2003) (where defendant was engaged primarily in business of providing delivery services, and plaintiffs performed the actual delivery work, plaintiffs' services constituted an integral part of the defendant's business); *Bonnetts,* 7 F.Supp.2d at 985.

### C. The "Circumstances of the Whole Activity."

Ultimately, the Court must determine whether the Plaintiff was dependent upon Defendant as an economis reality.  The "economic dependence" at issue "is dependence on that job for that income to be continued and not necessarily for complete sustenance."  *Halferty,* 821 F.2d at 267.  Further, "the proper test of economic dependence mandates consideration of all the factors, and in light of such consideration examines whether the workers are dependent on a particular business or organization for their continued employment in that line of business."  *Id.* at 267-68 (internal citation and quotation omitted); *see also Gustafson v. Bell Atlantic Corp.,* 171 F.Supp.2d 311, 324 (S.D.N.Y.2001) ("[T]he ultimate concern is whether, as a matter of economic reality, the workers depend upon someone else's business for the opportunity to render service or are in the business for themselves.") (internal citation and quotation omitted).

A review of the factors, and the evidence pertinent to each, suggests that, notwithstanding the contractual identification of the Plaintiff as an independent contractor and Defendant's attempts to structure the relationship accordingly, the Plaintiff actually served in an employee-employer relationship with Defendant.  The evidence suggests that the Plaintiff was not so independent of Defendant as to be in business for himself but instead depended on Defendant for his employment in the cable installation business.

### C. Decisions cited by Defendant.

Defendant's reliance upon the decisions cited in paragraph 8 of its Motion is misplaced. In *Freund v. Hi-Tech Satellite, Inc.,* 185 Fed.Appx. 782 (11th Cir.2006), the Eleventh Circuit affirmed the district court's finding that a plaintiff was an independent contractor and not an employee.  *Id.* at 783.  There, the plaintiff worked as a home satellite and entertainment systems installer whose day to day regulation of his work habits, work hours and work methods were

determined by him.   *Id.*   Moreover, the Court determined that the installer at issue had specialized skills and could take as many or as few jobs as he desired.

As pointed out above, there is no evidence in the record that Plaintiff utilized specialized skills in the performance of his duties.  Moreover, there is undisputed evidence in the records that Plaintiff and other installation technicians were would be terminated and threatened with disciplinary action if they did not work the hours necessitated by their work.  (Doc. 23-3, ¶ 9); (Doc. 23-4, ¶ 8).  Further, Plaintiff did not regulate his work hours and was subject to discipline if he failed to report to work on time.[4]  (Muller, 57:14-17); (Doc. 23-3, ¶ 17); (Doc. 23-4, ¶ 12).

Defendant's reliance on *Santelices v. Cable Wiring*, 147 F.Supp.2nd 1313 (S.D. Fla. 2001), is surprising because it does not support Defendant's position.  In that case the district court determined that there were genuine issues of material fact as to whether or not the cable installer at issue was in business for himself or an employee of the of the cable installation vendor for CWI Cable.  The district court granted summary judgment for CWI Cable, but found summary judgment was inappropriate as to the cable installation vendor.  *Id* at 1329.

Defendant's reliance on *Muller v. AM Broadband, LLC*, 2008 U.S. Dist. Lexis 20035 (S.D. Fla. 2008),[5] is equally surprising as the district court found "that, drawing all inferences in favor of Plaintiff, genuine issues of material fact remain as to whether Plaintiff is an independent contractor."  *Id*. at *4.

<u>CONCLUSION</u>

Based upon the foregoing evidence and argument, Plaintiff respectfully requests that the Court deny Defendant's Motion for Summary Judgment in its entirety as a genuine issue of material fact exists as to whether Plaintiff was an employee of Defendant.

---

[4] Defendant disputes that Plaintiff was subject to discipline if he failed to show up on time.  (Muller, 133:3-9).
[5] The WestLaw citation for this decision is *Muller v. AM Broadband, LLC*, 2008 W.L. 708321 (S.D. Fla. 2008).

Respectfully submitted,


Dated: June 11, 2009                    */s/ K.E. Pantas*
                                        K.E. PANTAS, ESQ.
                                        Bar No.: 0978124
                                        PANTAS LAW FIRM, P.A.
                                        250 North Orange Avenue, 11th Floor
                                        Orlando, Florida 32801
                                        Tel.: (407) 425-5775
                                        Fax.: (407) 425-2778
                                        E-Mail: Clerk@PantasLaw.com
                                        Trial Counsel for Plaintiff


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I presented the foregoing to the Clerk of the court for filing and uploading to the CM/ECF system which will send a notice of electronic filing to the following: Mark O. Cooper, Esq., O'Neill, Liebma & Cooper, P.A., 2699 Lee Road, Suite 320, Winter Park, Florida 32879. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants: None, this 11th day of June, 2009.

                                        */s/K.E. Pantas*
                                        K.E. PANTAS, ESQ.